78 So.3d 420 (2011)
Ellis ISBELL
v.
AZTECAS MEXICAN GRILL.
2100333.
Court of Civil Appeals of Alabama.
June 30, 2011.
Rehearing Denied August 19, 2011.
*421 Beverly Owen Barber, Pell City, for appellant.
Deborah Ann Wakefield and Dorothy A. Powell of Parsons, Lee & Juliano, P.C., Birmingham, for appellee.
THOMPSON, Presiding Judge.
Ellis Isbell filed a complaint against Aztecas Mexican Grill ("Aztecas") alleging negligence and wantonness in connection with an injury he suffered while on Aztecas's premises. Aztecas answered and denied liability, and it later moved for a summary judgment. On June 21, 2010, the trial court entered a summary judgment in favor of Aztecas. Following the denial by operation of law of Isbell's postjudgment motion, Isbell timely appealed. Our supreme court transferred the appeal to this court pursuant to § 12-2-7(6), Ala. Code 1975.
The evidence submitted by Aztecas in support of its summary-judgment motion indicates the following pertinent facts. Aztecas is a restaurant located in Pell City that serves Mexican food. On April 24, 2008, Isbell and his wife, Tracie Isbell ("Tracie"), went to Aztecas for dinner to celebrate Isbell's birthday. Isbell testified that he has had three back surgeries because of a 1998 on-the-job injury that still causes him pain and for which he takes daily pain medication. Isbell and Tracie each testified that, because of Isbell's preexisting back condition, he is often more comfortable sitting on a padded seat, so they requested that the Aztecas hostess seat them in a booth.
Isbell and Tracie testified that, after being seated in a booth adjacent to the door to the kitchen, they ordered their meal and were served their food. Isbell stated that, during the meal, he was aware that another person was sitting in the booth seat directly behind him because he could feel the other person moving in his own seat during the meal. Isbell testified that, when he was almost finished eating, he felt the person behind him move again. Shortly thereafter, the booth seat upon which Isbell was sitting collapsed, causing Isbell to fall to the floor.
Isbell testified that, immediately after falling to the floor, he felt excruciating pain in his back and legs. Isbell stated that two or three of Aztecas's employees assisted him to his feet and that he was humiliated when those employees and other restaurant employees laughed at him. Tracie testified that one of Aztecas's employees offered to call an ambulance but that Isbell declined that offer and instead insisted that he be taken home. Isbell testified that he sought medical treatment for his pain the next day. Isbell sued Aztecas on October 1, 2008.
In their depositions, both Isbell and Tracie testified that they had not noticed any *422 defect in the booth at the time they were seated, and Isbell stated that, if he had thought the booth was unstable, he would have asked to be seated at a different table. Neither Isbell nor Tracie heard any creaking or other noise from the booth seat before it collapsed. The couple also stated that none of Aztecas's employees had indicated that there might be a problem with the booth seat. Isbell and Tracie each testified that he or she had no knowledge regarding what might have caused the booth seat to collapse. Isbell testified that he did not believe his size or weight caused the booth seat to collapse; Isbell is 6 feet, 3 inches tall and weighed 265 pounds at the time of the incident.
In opposition to Aztecas's summary-judgment motion and evidentiary submission, Isbell initially submitted only a legal argument, and Aztecas filed a response to that argument. On June 9, 2010, Isbell filed a "supplemental response" to the motion for a summary judgment in which he stated that he had earlier requested and been granted an additional seven days in which to submit evidence in opposition to the summary-judgment motion.[1] In support of that "supplemental response," Isbell submitted the affidavit of Elisabeth Ann Presley, and, in his supplemental response, he alleged that he was still attempting to locate additional witnesses to testify that water damage had weakened the booth seat that had collapsed under him.
Aztecas moved to strike Presley's affidavit. The trial court did not rule on that motion. However, in its summary judgment in favor of Aztecas, the trial court noted that Isbell's "recent submission failed to produce admissible affidavits in support of [his] opposition" to Aztecas's summary-judgment motion.
Isbell filed a postjudgment motion. Eighty-nine days following the filing of that postjudgment motion, Isbell filed a "renewed" postjudgment motion, and he submitted, in support of that "renewed" motion, an affidavit of another witness. Isbell's postjudgment motion was denied by operation of law on the day following the filing of his "renewed" postjudgment motion.
As an initial matter, we note that the trial court's summary judgment indicates that it did not consider Presley's affidavit, the only evidence timely submitted by Isbell in opposition to the summary-judgment motion.[2] Isbell has not challenged that part of the trial court's summary judgment in which the trial court *423 determined that Isbell had failed to submit admissible evidence in opposition to the summary-judgment motion. Issues not raised in the appellant's brief on appeal are deemed waived. Boshell v. Keith, 418 So.2d 89, 92-93 (Ala.1982). Thus, for the purposes of resolving this appeal, we must conclude that Isbell submitted no admissible evidence in opposition to Aztecas's summary-judgment motion.
On appeal, Isbell argues that the trial court erred in entering a summary judgment in favor of Aztecas because, he contends, the issue of notice to Aztecas of the alleged defect in the booth seat was a question for the jury.
"`On a motion for a summary judgment, the burden is initially on the movant to make a prima facie showing that there is no genuine issue of material fact (i.e., that there is no dispute as to any material fact) and that the movant is entitled to a judgment as a matter of law.' Attorneys Ins. Mut. of Alabama, Inc. v. Smith, Blocker & Lowther, P.C., 703 So.2d 866, 868 (Ala.1996); Rule 56, Ala. R. Civ. P. See McClendon v. Mountain Top Indoor Flea Market, Inc., 601 So.2d 957, 958 (Ala. 1992). Thus, `[t]he burden to present evidence that will establish a genuine issue of material fact does not shift to the nonmovant unless the movant [first] satisfies its burden.' O'Barr v. Oberlander, 679 So.2d 261, 263 (Ala. Civ.App.1996)."
Denmark v. Mercantile Stores Co., 844 So.2d 1189, 1192-93 (Ala.2002). On appeal, Isbell, in essence, contends that Aztecas did not meet its burden under the applicable summary-judgment standard so that the burden of presenting evidence that Aztecas had actual or constructive knowledge of the alleged defect shifted to him.
With regard to premises-liability cases, our supreme court has stated:
"`A store owner's duty is well-established. That duty is "to exercise reasonable care to provide and maintain reasonably safe premises for the use of his customers." Maddox v. K-Mart Corp., 565 So.2d 14, 16 (Ala.1990). Consequently, injured "plaintiffs must prove that the injury was proximately caused by the negligence of [the store owner] or one of its servants or employees. Actual or constructive notice of the presence of the substance [or instrumentality that caused the injury] must be proven before [the store owner] can be held responsible for the injury." Id.'"
Dolgencorp, Inc. v. Hall, 890 So.2d 98, 100 (Ala.2003) (quoting Denmark v. Mercantile Stores Co., 844 So.2d at 1192).
In this case, there is no admissible evidence indicating that Aztecas had actual or constructive knowledge of the defective condition of the booth seat that collapsed beneath Isbell. However, such knowledge is not required in all circumstances. In Edwards v. Intergraph Services Co., 4 So.3d 495 (Ala.Civ.App.2008), this court explained that exceptions exist to the requirement that the plaintiff must present substantial evidence that a business owner had actual or constructive notice of a dangerous or defective condition of the property. Those exceptions include when the business owner "affirmatively created" the defective condition, such as by placing items in an aisle, or when the business owner fails to perform reasonable inspections or maintenance of the premises to discover or prevent the defective condition. Edwards v. Intergraph Servs. Co., 4 So.3d at 503.
In asserting his argument on appeal, Isbell relies on Mims v. Jack's Restaurant, 565 So.2d 609 (Ala.1990), which he contends sets forth an applicable exception to the requirement that he demonstrate that Aztecas had actual or constructive *424 knowledge of the alleged defect in the booth seat. In that case, Mims was injured when she tripped and fell over a threshold in the doorway to Jack's restaurant. A witness testified that, at the time Mims fell, the threshold was loose and some screws that were supposed to hold it to the floor were missing. Our supreme court reversed a summary judgment entered in favor of the restaurant, holding that there was "substantial evidence from which a jury could find that a defect existed in the threshold of the door and that the defect caused Ms. Mims to trip, thereby causing her injuries." 565 So.2d at 610. In reaching its holding, our supreme court explained the standard governing premises-liability actions such as this one, as well as its reasoning in reaching its holding:
"Ms. Mims was a business invitee of the defendant. Therefore, it owed her a duty to exercise ordinary and reasonable care in providing and maintaining reasonably safe premises for her. Cox v. Western Supermarkets, Inc., 557 So.2d 831 (Ala.1989). The question of whether the threshold, if it was defective, had been defective for such a period of time that Jack's should have discovered the defect, was for the jury.
"The facts in this case should be distinguished from the facts in a case where a plaintiff slips and falls on a slick spot on a floor caused by food or another substance. In one of those slip and fall cases, a plaintiff not only must make a prima facie showing that her fall was caused by a defect or instrumentality (a substance causing a surface to be slick) located on the premises, but she must also present prima facie evidence that the defendant had or should have had notice of the defect or instrumentality at the time of the accident. Massey v. Allied Products Co., 523 So.2d 397 (Ala. 1988); Tice v. Tice, 361 So.2d 1051 (Ala. 1978). On the other hand, in cases where the alleged defect is a part of the premises (in this case, a loose threshold in the main entrance of a restaurant), once a plaintiff has made a prima facie showing that a defect in a part of the premises has caused an injury, then the question whether the defendant had actual or constructive notice of the defect will go to the jury, regardless of whether the plaintiff makes a prima facie showing that the defendant had or should have had notice of the defect at the time of the accident. For example, in Winn-Dixie Montgomery, Inc. v. Weeks, 504 So.2d 1210 (Ala.1987), a mother was going through a grocery store pushing a shopping cart, in which her son was sitting. The only unusual thing she noticed about the cart was that the wheels made a loud noise and were wobbly. While she left the cart for a moment, the child leaned over to reach for candy in a display rack, and, as he did so, the cart tilted over and his left cheek was impaled on an allegedly broken wire that was sticking up on the display rack. The defendants, appealing from a judgment based on a jury verdict in favor of the plaintiff, argued that there was no evidence that they had constructive notice of the defect. This Court affirmed, holding that the question whether the grocery store had constructive notice of the alleged defect was for the jury. Winn-Dixie Montgomery, Inc. v. Weeks, 504 So.2d at 1211.
"In both this case and in Weeks, the alleged defect or instrumentality was a part of the premises. Unlike a spilled substance, a defective threshold or a cart or a display rack is a fixture that requires ordinary and reasonable maintenance in order to provide safe premises for the store's customers. Because it was the main entrance of the restaurant, we find that the question whether Jack's *425 should have known that the threshold was defective was a question for the jury."
565 So.2d at 610-11 (emphasis added).
We note that this court has interpreted the second paragraph of the above-quoted portion of Mims v. Jack's Restaurant, supra, as narrowing "the apparent broadness" of the portion of that opinion specifying that actual or constructive knowledge was a jury question when the alleged defect is a part of the premises. Edwards v. Intergraph Servs. Co., 4 So.3d at 505. In Edwards v. Intergraph Services Co., because Edwards had not alleged that the defendant had failed to properly inspect or maintain the allegedly defective portion of the premises, this court held that "neither of the . . . exceptions to the rule that an invitee must present substantial evidence that the premises owner knew or should have known of the dangerous or defective condition applies." 4 So.3d at 505. In that case, however, this court concluded that Edwards had proceeded under the sole theory that a design defect caused his injury. Edwards v. Intergraph Servs. Co., 4 So.3d at 504 ("Edwards's deposition testimony makes it clear that he sought to impose liability upon Intergraph for a `design defect'" in the portion of the premises that allegedly caused his injury). In this case, there is no indication that Isbell has limited his claim for recovery in such a manner.
This court is bound by the precedent established by our supreme court. § 12-3-16, Ala.Code 1975 ("The decisions of the Supreme Court shall govern the holdings and decisions of the courts of appeals. . . ."); Farmers Ins. Exch. v. Raine, 905 So.2d 832, 835 (Ala.Civ.App. 2004). Given our supreme court's holding in Mims v. Jack's Restaurant, supra, we must agree with Isbell that, because the booth seat that collapsed under him was a fixture or "a part of the premises," the issue whether Aztecas had actual or constructive notice of the alleged defect in the booth seat should "go to the jury, regardless [of the fact that Isbell failed to make] a prima facie showing that [Aztecas] had or should have had notice of the defect at the time of the accident." 565 So.2d at 610. For that reason, we reverse the summary judgment in favor of Aztecas and remand the cause for further proceedings.
REVERSED AND REMANDED.
PITTMAN, BRYAN, and THOMAS, JJ., concur.
MOORE, J., concurs in the result, without writing.
NOTES
[1] The record on appeal contains no order granting Isbell additional time to locate evidence in opposition to the summary-judgment motion. A notation on the State Judicial Information System dated June 2, 2010 (seven days before Isbell filed his June 9, 2010, supplemental response to the summary-judgment motion) states "Summary Judgment/No Action."
[2] Subject to certain exceptions not relevant here, the affidavit Isbell submitted in support of his "renewed" postjudgment motion could not be properly considered by the trial court because it was not before that court at the time it considered Aztecas's summary-judgment motion. Mardis v. Ford Motor Credit Co., 642 So.2d 701, 705 (Ala.1994) ("`[T]he trial court can consider only that material before it at the time of submission of the motion' and . . . `[a]ny material filed after submission of the motion comes too late.'") (quoting Guess v. Snyder, 378 So.2d 691, 692 (Ala.1979)); see also McCollough v. Regions Bank, 955 So.2d 405, 409 (Ala.2006) ("In order to present new evidence in a motion to alter, amend, or vacate a summary judgment, `"the plaintiff must show circumstances which prevented his presenting evidence to counter that offered in support of the summary judgment."'" (quoting Moore v. Glover, 501 So.2d 1187, 1189-90 (Ala.1986), quoting in turn Willis v. Ideal Basic Indus., Inc., 484 So.2d 444, 445 (Ala.1986))).