The Montgomery Circuit Court entered a summary judgment, as to all claims, for the defendants, the City of Montgomery and Cpl. D.P. Griffin (a police officer of the City of Montgomery), in the plaintiff Christopher Luckie's action alleging malicious prosecution, false imprisonment, assault and battery, and the tort of outrage. The Court of Civil Appeals reversed the summary judgment on all claims except the malicious-prosecution and tort-of-outrage claims as to the City of Montgomery. Luckie v. City ofMontgomery, 758 So.2d 560 (Ala.Civ.App. 1999). We have granted the defendants' petition for certiorari review. We reverse.
The defendant Cpl. D.P. Griffin arrested Christopher Luckie on the night of October 9, 1996. Luckie was charged with driving under the influence of alcohol and a controlled substance. She was tried in the Montgomery Municipal Court and was convicted of DUI.[1] Luckie filed this action on March 7, 1997, against Cpl. Griffin and the City of Montgomery. On October 7, 1997, the defendants moved for a summary judgment and filed a brief in support of their motion. Also, in support of their summary-judgment motion, the defendants submitted the affidavit Cpl. Griffin had made earlier in regard to the DUI charge. That affidavit read as follows:
 "On the listed date and time while this unit had a vehicle stopped in the parking lot of the BP [apparently a reference to a gasoline station] on the Atlanta Hwy., [Luckie,] who was driving a 1986 [Nissan Maxima automobile], collided into the rear of an Accura Integra [automobile] on N. Burbank Dr. at Atlanta Hwy. While working the accident, this officer observed the defendant swaying while standing and . . . having to sit back on her vehicle. Her eyes were bloodshot, and she acted incoherent. When asked the first time she stated she had not had anything to drink, then after further questioning she stated that she had had a couple of glasses of wine at the Macaroni Grill. At this time the following field sobriety test[s] were performed; one leg stand — the defendant dropped her foot on each count and stopped counting at six.
 "Finger to nose — she was very unsteady — swaying back and forth the entire time.
 "Walk and turn — she had to be told three times to stand as directed while test was administered. She started the first time and took three steps before almost falling. She was directed to start again — she missed heel to toe, did not count out loud, stepped off the line three times, lost her balance while turning around, and only took four steps coming back before losing her balance.
 "Alphabet — she was able to say her alphabet correctly.
 "At this time she was placed under arrest for D.U.I. and had her rights read to her. She stated that she had also been taking a prescription nerve pill and that the label advised against drinking while taking it. Once at Headquarters, *Page 568 
the defendant blew a .01 on both Intox 5000 test[s]."
Luckie did not respond to the defendants' summary-judgment motion. On April 2, 1998, the trial court entered a summary judgment for the defendants, on all claims. Four days later, on April 6, 1998, Luckie filed a motion to set aside the summary judgment, and she filed a brief in support of that motion two months later, on June 3, 1998. The trial court denied this motion. On appeal, by a 3-2 decision, the Court of Civil Appeals reversed the summary judgment as it related to all claims against Cpl. Griffin and as it related to all claims against the City except the malicious-prosecution and tort-of-outrage claims. In the majority opinion, the court appeared to treat Luckie's "Motion to Set Aside Summary Judgment," and her brief in support thereof, as a "response" to the defendants' summary-judgment motion.
The certiorari petition raises two substantive issues: (1) Whether the Court of Civil Appeals correctly designated Luckie's "Motion to Set Aside Summary Judgment" as a "response" to the defendants' already-granted summary-judgment motion. (2) Whether the defendants were entitled to the qualified immunity provided under Ala. Code 1975, § 6-5-338.
A trial court should grant a motion for summary judgment only where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56, Ala.R.Civ.P. The moving party must make a prima facie showing that there is no genuine issue of material fact; once that showing is made, the burden shifts to the nonmoving party to present substantial evidence creating such an issue. Bass v. SouthTrustBank of Baldwin County, 538 So.2d 794 (Ala. 1989); Bean v. Craig,557 So.2d 1249, 1252 (Ala. 1990); Ex parte Martin, 733 So.2d 392
(Ala. 1999). The evidence must be viewed in the light most favorable to the nonmoving party. Wayne J. Griffin Electric, Inc.v. Dunn Constr. Co., 622 So.2d 314 (Ala. 1993). However, Rule 56(e), Ala.R.Civ.P., provides:
 "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against him."
(Emphasis added.) A lack of response by the nonmoving party will not automatically result in the entry of a summary judgment, but, instead, that party will risk having the motion granted against him if granting the motion is appropriate on the merits. Ex parteOden, 617 So.2d 1020 (Ala. 1992). A party failing to respond incurs the risk that the trial court will not hear evidence to support the nonmoving party's argument because, once the trial court enters a summary judgment, "[a] post-judgment motion may not be used to belatedly submit evidence in opposition to a motion for a summary judgment." White v. Howie, 677 So.2d 752, 754
(Ala.Civ.App. 1995), citing Moore v. Glover, 501 So.2d 1187 (Ala. 1986). "In determining whether to grant or deny a motion for summary judgment, `[t]he trial court can consider only that material before it at the time of submission of the motion. . . . Any material filed after submission of the motion comes too late.'Guess v. Synder, 378 So.2d 691, 692 (Ala. 1979)." Moore, 501 So.2d at 1189; Preferred Research, Inc. v. First American Title Ins.Co., 627 So.2d 861, 863 (Ala. 1993).
Luckie, the nonmoving party, filed no response to the defendants' motion for summary judgment or to the brief filed in support of that motion. Six months after the defendants filed the motion and the brief, the trial court granted the motion. *Page 569 
After the trial court had entered the summary judgment, Luckie filed her "Motion to Set Aside Summary Judgment." The authority for this motion is Rule 59(e), which allows a motion to alter, amend, or vacate a judgment. However, as illustrated above, this Court has long held that "[a] Rule 59(e) motion does not operate to extend the time for filing affidavits or other material in opposition to a motion for summary judgment." Moore, 501 So.2d at 1189;Holland v. Jenkins, 567 So.2d 1347, 1348 (Ala. 1990). It is the task of this Court to view the evidence that was before the trial court when that court entered the summary judgment. Therefore, this Court will not consider Luckie's "Motion to Set Aside Summary Judgment" and the brief in support thereof; those items are irrelevant to the question whether the summary judgment was proper. Rule 56(e) does not provide that the nonmoving party will be in default for failing to respond to a summary-judgment motion. A trial court should grant a motion for summary judgment only where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56, Ala.R.Civ.P. Because Luckie did not file any response or present any evidence to rebut the defendants' summary-judgment motion, all this Court must determine is whether the defendants made a prima facie showing that there was no genuine issue of material fact. Luckie's lawsuit was based on claims of malicious prosecution, false imprisonment, assault and battery, and the tort of outrage. The defendants, in their motion for summary judgment, contended that both the City of Montgomery and Cpl. Griffin are immune from such claims, under Ala. Code 1975, § 6-5-338, which provides in pertinent part:
 "(a) Every peace officer, except constables, who is employed or appointed pursuant to the Constitution or statutes of this state, whether appointed or employed as such peace officer by the state or a county or municipality thereof, or by an agency or institution, corporate or otherwise, created pursuant to the Constitution or laws of this state and authorized by the Constitution or laws to appoint or employ police officers or other peace officers, and whose duties prescribed by law, or by the lawful terms of their employment or appointment, include the enforcement of, or the investigation and reporting of violations of, the criminal laws of this state, and who is empowered by the laws of this state to execute warrants, to arrest and take into custody persons who violate, or who are lawfully charged by warrant, indictment, or other lawful process, with violations of, the criminal laws of this state, shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.
 "(b) This section is intended to extend immunity only to peace officers and governmental units or agencies authorized to appoint peace officers. No immunity is extended hereby to any private non-governmental person or entity, including any private employer of a peace officer during that officer's off-duty hours."
(Emphasis added.) The first question we must ask is whether Cpl. Griffin was engaged in a discretionary function when he arrested Luckie? Discretionary functions have been described by this Court as being "those acts as to which there is no hard and fast rule as to the course of conduct that one must or must not take and those acts requiring exercise in judgment and choice and involving what is just and proper under the circumstances." Wright v. Wynn,682 So.2d 1, 2 (Ala. 1996). This Court has also held, however, that acts taken in bad faith, or willful or malicious conduct, will not be considered discretionary in nature. Couch v. City ofSheffield, *Page 570 708 So.2d 144, 153 (Ala. 1998); Wright, 682 So.2d 1; see also Barnes v. Dale, 530 So.2d 770 (Ala. 1988); DeStafneyv. University of Alabama, 413 So.2d 391 (Ala. 1981).
Griffin's act of arresting Luckie was clearly a discretionary function. There is no hard and fast rule concerning when there is and when there is not probable cause to arrest a driver suspected to be under the influence of alcohol and/or drugs. Cpl. Griffin had to make a decision by exercising his judgment. As a result, he and his employer, the City of Montgomery, are immune under §6-5-338, unless his actions were conducted with willful or malicious intent or in bad faith.
First, we look to whether Griffin had probable cause to arrest Luckie.[2] Probable cause is not the amount of admissible evidence that is needed to convict a person of a particular crime.
 "`[Instead, it] exists if facts and circumstances known to the arresting officer are sufficient to warrant a person of reasonable caution to believe that the suspect has committed a crime. . . . `Probable cause to arrest is measured against an objective standard and, if the standard is met, it is unnecessary that the officer subjectively believe that he has a basis for the arrest.' . . .
 "`Dixon v. State, 588 So.2d 903, 906 (Ala. 1991). . . . "[O]nly the probability, and not a prima facie showing, of criminal activity is the standard of probable cause." Spinelli v. United States, 393 U.S. 410, 419 (1969).'"
Couch, 708 So.2d at 155-56. Cpl. Griffin was told by Luckie that she had consumed some amount of alcohol, as well as a prescription drug that was not to be mixed with alcohol. The evidence indicated that Luckie's eyes were bloodshot, that she was nervous, that she was swaying, and, in addition, that she failed the "finger-to-nose test" and other field sobriety tests.
Although the evidence contains slight discrepancies as to Luckie's possible level of drunkenness, they do not affect the fact that the record contains undisputed evidence showing that Cpl. Griffin had facts on which he could reasonably believe Luckie was under the influence of alcohol and a controlled substance. Given these undisputed facts, it is clear that Cpl. Griffin had probable cause to arrest Luckie, and, because "the standard [was] met, it [was] unnecessary that the officer subjectively believe that he [had] a basis for the arrest." Dixon, 588 So.2d at 906.
Additionally, another factor contradicts any suggestion of malicious intent or bad faith on the part of Cpl. Griffin. The defendants point out that had Griffin released a probable drunk driver to drive on the streets, he would have been putting the citizens of Montgomery in danger.
Before the court entered the summary judgment, the defendants made a prima facie showing that Cpl. Griffin arrested Luckie with probable cause and without bad faith or a malicious or willful intent. Luckie did not refute this showing before the summary judgment was entered. Cpl. Griffin's arrest of Luckie was within the discretionary-function immunity provided in § 6-5-338. Therefore, the Court of Civil Appeals erred when it partially reversed *Page 571 
the defendants' summary judgment.
REVERSED AND REMANDED.
Hooper, C. J., and Maddox, Cook, See, Lyons, Brown, Johnstone, and England, JJ., concur.
[1] There were two municipal-court proceedings. At the time of the first one, Cpl. Griffin was living in Texas and was unavailable to testify. These facts caused the charge to be dismissed, but once Cpl. Griffin returned to Montgomery the charge was reinstated and Luckie was convicted.
Luckie says the conviction was later reversed in the circuit court, but she admits that this fact does not appear in the record before this Court.
[2] We have read the amicus curiae briefs presented to us by the City of Hoover and the Alabama League of Municipalities. Because in the present case there exists a situation where both probable cause and discretionary-function immunity are present, we do not discuss the relationship between the two concepts. By this, we mean neither to approve nor to disapprove this statement by the Court of Civil Appeals: "[W]e conclude that there is a question of fact as to whether [Officer] Griffin had probable cause to arrest Luckie. Therefore, we conclude that there exists a genuine issue of material fact as to whether [Officer] Griffin's arrest of Luckie was in bad faith or [was] done with a malicious or a willful intent." Luckie, 758 So.2d at 564. We will take up that issue when and if the facts in a future case present it.